# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 12 |
| KARL A. BLAKE | |
| JENNA K. BLAKE | |
| | Case No. 16-60425 |
| Debtor(s). | |

## OPINION

This matter is before the court on the Debtors' Motion to use Cash Collateral and the Response and Objection to Debtors' Motion to use Cash Collateral filed by First Financial Bank, N.A. (Bank). The Court having heard sworn testimony, reviewed the exhibits submitted by the parties and the record of this proceeding makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## DISCUSSION

The Debtors wish to reorganize their farming operation on a smaller scale and intend to present an Amended Chapter 12 Plan to address their creditors' claims. At the hearing, Debtors presented 2 witnesses and 3 exhibits in support of their motion. The Court found the testimony of Debtor, Karl Blake and his son to be sincere and credible. The evidence presented in Debtors' exhibits concerning projected 2017 input costs and expenses was thorough and largely unrebutted by the Bank. Karl Blake has farmed for over 20 years and until recently farmed as much as 2,000 acres of ground. Karl Blake further testified that the use of the Bank's cash collateral was necessary due to his inability to secure financing from any other lender.

The Debtors filed for relief under Chapter 12 of the Bankruptcy Code on November 2, 2016. The Debtors currently farm approximately 550 acres of ground and raise a small herd of cattle. The majority of Debtors' farm ground is leased on a cash rent basis. The Debtors scheduled debt in excess of $210,000.00 to First Financial Bank which is secured by liens on Debtors' crops and crop proceeds. In their Motion to Use Cash Collateral, the Debtors seek to use Cash Collateral of the Bank to fund approximately $179,520.80 in crop input costs for the 2017 crop year and the payment of 2017 cash rent in the approximate amount of $85,222.00. The Debtors currently hold Cash Collateral of the bank that consists of $50,935.99 from 2015 crop proceeds, approximately $220,000 from 2016 proceeds, and $52,117.00 from USDA government ARC payments.[1]

As adequate protection for use of the Bank's Cash Collateral, the debtors propose to grant a security interest post-petition to Bank in the 2017 crop, crop insurance, and government payments of any nature in which the Debtors currently have an interest, or interests which they may subsequently acquire. The Debtors propose to grant the Bank a first and paramount lien on the 2017 crops and related Collateral and to pay interest at the rate of 5.25% on the total amount of Cash Collateral eventually expended. In addition, the Debtors propose to grant the Bank a priority administrative expense claim to the extent that proceeds from the 2017 Crop and related collateral are insufficient to repay the expended Cash Collateral plus interest.

The Bank has objected to the Debtors' use of cash collateral, asserting that the Debtors have consistently lost money on their farming operation since 2007 and that the proposed replacement liens in the crop and related collateral and proposed administrative expense claim in favor of the Bank do not provide adequate protection of the Bank's interest in the cash collateral.

---

[1] The Debtors have filed an adversary proceeding to determine if the ARC payments are in fact collateral of the bank.

The Bankruptcy Code provides under 11 U.S.C. § 363 (e) that the Debtors' use of cash collateral must be conditioned, as is necessary, to provide adequate protection of the Bank's interest in the collateral. The nature and extent of the adequate protection which must be provided, in Chapter 12 Cases, is governed by 11 U.S.C § 1205.

In most cases, a bare replacement lien in non-existent crops will not be enough protection to allow a debtor to proceed on a cash collateral motion. *In re Dorr,* Case No 87-30660 (Bankr. S.D. Ill. 1988). The Debtors bear the burden to show that the Bank's interest in the cash collateral is adequately protected. The debtors must go beyond simply estimating what they hope they can harvest and what they hope the market will bring. *In re Wieseler*, 45 B.R. 871 (D.S.D 1985); *In re Walker*, 2011 Bankr. Lexis 690, 2011 WL 839508 (Bankr. C.D. Ill. 2011). Although this court concurs with the rationale of the *Wieseler* and *Walker* decisions, this court finds that the facts of the instant cast are distinguishable. Unlike the debtors in *Wieseler* and *Walker,* the Debtors in this case not only propose a replacement lien on 2017 crops, but they also propose assignment of any 2017 crop insurance proceeds, assignment of government payments and the provision of an priority administrative expense claim in favor of the Bank to the extent all other collateral is insufficient to pay for cash collateral expended plus interest.

In support of their motion, the Debtors submitted a projected cash flow statement for the 2017 crop year. (Debtors' Exhibit A). The Debtors project a $97,108.69 profit for the 2017 crop year.[2]  This profit anticipates paying all expenses including repayment of the Bank's expended cash collateral. The Debtors also submitted an updated crop imput cost analysis which indicates that the 2017 crop inputs may actually be $18,748.27 less than was initially projected in their 2017 cash flow projection. (Debtors' Exhibit B-1). The Debtors contend that their proposed

---

[2] This figure must be reduced by $2,200.00 due to increased cash rent resulting from the Debtors' stay relief agreement with First Bank and Trust.

Chapter 12 Plan payments can be made in 2017 with a net income of $19,052.85 for the Debtors after those plan payments are made. (Debtors' Exhibit C).

In challenging the Debtors' motion, the Bank first asserts that the Debtors have consistently shown losses on their tax returns dating back to 2007. The Bank notes that, Debtors 2015 tax returns showed a net operating loss carry forward of $793,711.00. The Bank argues that these historical losses established that the Debtors cannot meet the Debtors' 2017 projections. (Bank's Exhibit #1). While these losses are of concern to the Court, the Court finds that the bulk of these losses can be attributed to depreciation expenses on equipment and a large loss of $354,806.00 in 2014. The Debtor testified that the large loss in 2014 was extraordinary in that crop prices were very low in 2014 and Mr. Blake was involved in a serious automobile accident, which caused the loss of a truck and trailer. It is clear that the year 2014 was extraordinary when compared to the other tax years dating back to 2007.

The Bank further argued that the Debtors' projected crop yields and crop prices were unreasonably high. In support of this argument, the Bank submitted its own crop price and yield projection. (Bank's Exhibit #3). The Bank argued that Debtors' projected income could be inflated by as much as $71,663.90.[3] In considering this argument, the Court finds that even taking the Bank's worst case scenario, the Debtors still show sufficient income for the 2017 crop year to repay expended cash collateral plus interest.[4] The Bank's argument further fails to recognize the additional security provided by Debtors' assignment of any and all government

---

[3] The Bank's projections do not include the $7,000.00 to $22,000.00 in additional off farm income included in the Debtors' 2017 cash flow projection. Jenna Blake has earned as much as $7,000.00 in off farm income and Karl Blake testified that he can earn as much as $15,500.00 off of the farm in 2017 given that farming less acreage will afford him extra time. The Bank did not rebut these projections.

[4] Debtors may in fact have more income than projected given the recent heavy rains and their potential positive effect on 2017 crop prices. The Debtors have not suffered any crop loss as a result of the rains and Karl Blake's unrebutted testimony was that the ground which he will be farming is in relatively good condition considering the recent heavy rains.

payments for the 2017 crop year, the provision of crop insurance proceeds[5], and the priority administrative expense claim in favor of the Bank in the event all other collateral is insufficient to repay the amount of the Bank's cash collateral used by the Debtors.[6]

## CONCLUSION

While this Court concurs that debtors are required to meet a high standard in obtaining authorization to use cash collateral in farm cases, the Court finds that based upon the credible evidence presented by the Debtors in support of their motion that adequate protection exists for the proposed use of cash collateral under the following terms:

1. Debtors shall grant First Financial Bank a first and paramount replacement lien on the 2017 crop and related collateral;

2. Debtors shall purchase multi-peril crop insurance on all of their 2017 crops, and shall maintain such insurance until said crop is harvested and sold. First Financial Bank shall be named as a beneficiary or loss-payee on the crop insurance policy;

3. Debtors shall execute any and all documents necessary to secure the Bank's interest in government payments of any nature in which the Debtors currently hold, or subsequently acquire an interest in;

4. To the extent that the 2017 crops and related collateral described above are not sufficient to repay principal cash collateral used plus 5.25%, First Financial Bank is awarded an administrative expense priority claim in accordance with 11 U.S.C § 507(b) for any collateral deficiency;

---

[5] The Debtors' budget includes funds to purchase crop insurance.
[6] The Court notes that the priority administrative claim may have little value based upon the Debtors' liquidation analysis. The Court further notes that First Financial Bank objected to the liquidation analysis, alleging that the Debtors' equipment was undervalued and that the debtors failed to include unencumbered vehicles in the analysis.

5. Debtors shall provide First Financial Bank with a monthly operating report with respect to the use of cash collateral, income, expenses, and cash flow and shall document the manner in which the cash collateral is used;

6. First Financial Bank shall have the right to inspect Debtors' premises and business records, as they concern the use of cash collateral, at reasonable times and upon reasonable notice to debtors and their attorney.

ENTERED: May 8, 2017

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE/6